**Howard A. OFFENBACH, M.D., Appellant,**

v.

**Debbie STOCKTON, as Parent and Next Friend of William Stockton, a minor, Appellee.**

No. 05–08–01185–CV.

Court of Appeals of Texas, Dallas.

March 11, 2009.

Rehearing Overruled April 13, 2009.

518

Michael A. Yanof, Stan Thiebaud, Paula Shiroma–Bender, Stinnett, Thiebauld & Remmington, L.L.P., Dallas, TX, for appellant.

Robert James Talaska, The Talaska Law Firm, Houston, TX, for appellee.

Before Justices FRANCIS, LANG–MIERS, and MAZZANT.

## OPINION

Opinion by Justice LANG–MIERS.

Howard A. Offenbach, M.D. appeals the trial court's order denying his motion to dismiss the health care liability claim filed against him by Debbie Stockton, as parent and next friend of William Stockton, a minor, for failure to timely serve an expert report. We reverse the trial court's order and remand with instructions to render judgment for appellant in accordance with former section 74.351(b) of the civil practice and remedies code.[1]

### BACKGROUND

On June 13, 2007, Stockton filed a health care liability claim against Offenbach alleging that he failed to exercise ordinary care before and during William's birth in July 1989 because he failed to perform a caesarian section in the face of an arrest of labor. She attached an expert report and curriculum vitae to the petition when it was filed. The expert opined that Offenbach's failure to recommend and perform a caesarian section based on Stockton's risk factors for vaginal delivery resulted in permanent severe impairment and disfigurement of William's left arm due to injury that occurred during birth. Stockton sought damages for William's injuries, past and future medical expenses, loss of future earning capacity, and special damages. Offenbach moved to dismiss the claims for failure to timely serve an expert report. The trial court denied the motion.

### STANDARD OF REVIEW

We review a trial court's decision to deny a motion to dismiss a health care liability claim for an abuse of discretion. *See Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios,* 46 S.W.3d 873, 875 (Tex.

---

1. Before September 1, 2005, section 74.351 required an expert report to be served "not later than the 120th day after the date the *claim* was filed." Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 10.01, 2003 Tex. Gen. Laws 847, 875, (emphasis added), *amended by* Act of May 18, 2005, 79th Leg., R.S., ch. 635, § 1, 2005 Tex. Gen. Laws 1590, 1590 (current version at TEX. CIV PRAC & REM CODE ANN. § 74.351 (Vernon Supp. 2008)). The current version requires the expert report to be served "not later than the 120th day after the date the *original petition* was filed." TEX. CIV PRAC. & REM CODE ANN. § 74.351 (Vernon Supp. 2008) (emphasis added). Because this cause of action accrued prior to September 1, 2005, the previous version of section 74.351 applies. *See* Act of May 18, 2005, 79th Leg., R.S., ch. 635, § 2, 2005 Tex. Gen. Laws 1590, 1590.

2001); *Baylor Univ. Med. Ctr. v. Biggs,* 237 S.W.3d 909, 916 (Tex.App.-Dallas 2007, pet. denied). A trial court abuses its discretion when it acts in an unreasonable and arbitrary manner, or when it acts without reference to any guiding rules or principles. *Walker v. Gutierrez,* 111 S.W.3d 56, 62 (Tex.2003). But to the extent resolution of this issue requires interpretation of a statute, we review the ruling under a de novo standard. *Yilmaz v. McGregor,* 265 S.W.3d 631, 637 (Tex.App.-Houston [1st Dist.] 2008, pet. denied); *Bohannon v. Winston,* 238 S.W.3d 535, 536 (Tex.App.-Beaumont 2007, no pet.). And if the statutory language is not ambiguous, we adopt, with few exceptions, the interpretation supported by its plain meaning. *Leland v. Brandal,* 257 S.W.3d 204, 206 (Tex.2008).

### APPLICABLE LAW

Former chapter 74.351 required a claimant in a health care liability claim to serve an expert report and the expert's curriculum vitae on each party or the party's attorney within 120 days from the date the claim was filed. *See* Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 10.01, 2003 Tex. Gen. Laws 864, 875. It authorized an extension of the 120–day period only "by written agreement of the affected parties." *Id.* If no expert report was served within 120 days and the parties had not agreed to extend the deadline, former section 74.351(b) allowed the affected physician to move for dismissal of the claims against him. It gave the trial court no discretion to deny the physician's motion:

> (b) If, as to a defendant physician or health care provider, an expert report has not been served within the [120–day] period . . ., the court, on the motion of the affected physician or health care provider, shall, subject to [an extension for a deficient report], enter an order that:

> (1) awards to the affected physician or health care provider reasonable attorney's fees and costs of court incurred by the physician or health care provider; and

> (2) dismisses the claim with respect to the physician or health care provider, with prejudice to the refiling of the claim.

*Id.*

### THE MOTION TO DISMISS

Stockton filed her claim on June 13, 2007. Consequently, the expert report had to be served on Offenbach by October 11, 2007, which was within 120 days of filing the claim. *See id.* It is undisputed that Stockton did not serve an expert report on Offenbach or his attorney by October 11, 2007. In fact, it is undisputed that Offenbach was not served with the expert report until sometime after March 2008 when he was served with citation by publication.

At the hearing on the motion to dismiss, Offenbach argued that the statute mandated dismissal because Stockton did not serve the report within 120 days from filing the claim. In response, Stockton argued that an exception should be made in this case because she could not locate Offenbach to serve him earlier. She alleged that Offenbach was a drug addict and was abusing drugs when William was born, that he continued to abuse drugs after William's birth, and that at some point he was indefinitely suspended from the practice of medicine. She alleged that Offenbach moved around and was evicted from at least two residences, and when she attempted to serve him at his last known address, she was told that Offenbach had not lived there for years. She said his whereabouts were unknown and his trail had "run cold." She also pointed out that

she had sent the expert report and CV to Offenbach's insurance carrier before she filed the lawsuit and that she had attached a copy of the expert report and CV to the original petition that she filed. She argued that it was impossible to serve Offenbach personally during the 120–day period because his last known address was invalid, certified mail letters were returned unclaimed, and her motion for substitute service was not granted until after the 120 days had expired. Stockton argued that the legislature could not have intended such an unjust result and that the statute violated the constitution. The trial court denied Offenbach's motion to dismiss, stating at the hearing that "the intent of the legislature was fulfilled by both sending the report to the insurance carrier before she filed suit and by filing the report at the time the petition was filed."

### THE MEANING OF THE STATUTE

■ We first look at the language of the statute to determine its meaning. This statute states that if a claimant does not serve an expert report within 120 days of filing the claim, the trial court "shall," on motion of the affected physician, dismiss the claim with respect to that physician. *Id.* Unlike former article 4590i, which gave a claimant two opportunities to seek an extension of time in which to furnish an expert report,[2] former section 74.351(a) does not contain a "due diligence" or "good cause" exception. *See Badiga v. Lopez,*

274 S.W.3d 681, 683 (Tex.2009) (contrasting section 74.351(a) and former article 4590i and noting that by enacting section 74.351(a) "the Legislature denied trial courts the discretion to deny motions to dismiss" when no report is served by the 120–day deadline); *Yilmaz,* 265 S.W.3d at 640; *Bohannon,* 238 S.W.3d at 538; *Herrera v. Seton Nw. Hosp.,* 212 S.W.3d 452, 460 (Tex.App.-Austin 2006, no pet.).

■ Additionally, the plain language of the statute requires the expert report to be served "on each party or the party's attorney," and does not authorize service on a party's insurance carrier. *See* Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 10.01, 2003 Tex. Gen. Laws 864, 875. Similarly, pre-suit service on a potential party does not satisfy the statutory service requirement. *See Poland v. Ott,* 278 S.W.3d 39, 45–51 (Tex.App.-Houston [1st Dist.] 2008, pet. filed) (explaining why pre-suit service does not comply with statute); *Univ. of Tex. Health Sci. Ctr. at Houston v. Gutierrez,* 237 S.W.3d 869, 873–74 (Tex. App.-Houston [1st Dist.] 2007, pet. denied) (stating that party's receipt of expert report before claim filed against it did not establish compliance with service requirements of section 74.351(a)). And filing it with the petition does not comply with the statute. *Herrera,* 212 S.W.3d at 459 (explaining that to "serve" under former section 74.351(a) means to comply with one of four methods of service in rule of civil

2. *See* Act of May 1, 1995, 74th Leg., R.S., ch. 140, § 1, 1995 Tex. Gen. Laws 985, 986 (stating in former section 13.01(f), "The court may, for good cause shown after motion and hearing, extend any time period specified in Subsection (d) of this section for an additional 30 days. Only one extension may be granted under this subsection" and in former section 13.01(g), "[I]f a claimant has failed to comply with a deadline established by Subsection (d) of this section and after hearing the court finds that the failure of the claimant or the claimant's attorney was not intentional or the result of conscious indifference but was the result of an accident or mistake, the court shall grant a grace period of 30 days to permit the claimant to comply with that subsection ...."), *repealed by* Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 10.09, 2003 Tex. Gen. Laws 864, 884 (subsequent amendments omitted) (current version at TEX CIV PRAC. & REM.CODE ANN. §§ 74.001–.507 (Vernon 2005 & Supp. 2008)).

procedure 21(a)). As a result, Stockton did not comply with the service requirements of former section 74.351(a) by delivering it to the insurance carrier or filing it with the court. Nevertheless, she argues that we should judicially engraft a "due diligence" exception to the 120–day deadline in situations where it is not possible to serve the defendant. But we are not permitted to engraft exceptions to the clear language in an unambiguous statute no matter how desirable the exceptions may seem. See *Laidlaw Waste Sys. (Dallas), Inc. v. City of Wilmer,* 904 S.W.2d 656, 659 (Tex.1995); *A.M. Servicing Corp. of Dallas v. State,* 380 S.W.2d 747, 748 (Tex.Civ. App.-Dallas 1964, no writ).

We conclude that Stockton did not serve an expert report in compliance with former section 74.351(a).

### THE CONSTITUTIONALITY OF THE STATUTE

■ Stockton also argues that former section 74.351(a) violates the due process and equal protection clauses of the United States Constitution.[3] But she did not cite any authority or make any argument to support her contention; she merely asserts that it does. As a result, Stockton's challenge to the statute's constitutionality on due process and equal protection grounds is not persuasive.

■ Stockton next argues that the statute violates the open courts provision of the Texas Constitution[4] because it requires her to accomplish the impossible— serve Offenbach when his whereabouts were unknown. The open courts provision "guarantees all litigants the right to redress their grievances ... the right to their day in court." *Odak v. Arlington Mem'l Hosp. Found.,* 934 S.W.2d 868, 871 (Tex.App.-Fort Worth, writ denied) (internal quotation and citation omitted). It is premised upon the rationale that the legislature has no power to make a remedy by due course of law contingent upon an impossible condition. *Moreno v. Sterling Drug, Inc.,* 787 S.W.2d 348, 355 (Tex.1990). In order to establish an open courts violation, a claimant must show that she has a well-recognized common-law cause of action that is being restricted and that the restriction is unreasonable or arbitrary when balanced against the purpose and basis of the statute.[5] *Id.* A party challenging the constitutionality of the expert report requirement as applied to her has the burden to show that the statute actually prevented her from pursuing her claim. See *Odak,* 934 S.W.2d at 872; *Herrera,* 212 S.W.3d at 461.

■ A statute that totally forecloses judicial review will be struck down as violative of the open courts provision. See *Tex. Ass'n of Bus. v. Tex. Air Control Bd.,* 852 S.W.2d 440, 442–43 (Tex.1993) (striking down statutes because they enabled administrative agencies to assess civil penalties for violations of regulations and precluded judicial review unless offender paid cash deposit or supersedeas bond for full amount of penalty); *R Commc'ns, Inc. v. Sharp,* 875 S.W.2d 314, 318 (Tex.1994) (striking down tax code provision as violative of open courts provision because re-

---

**3.** *See* U.S. CONST amend. XIV, § 2.

**4.** *See* TEX CONST. art. I, § 13 ("All courts shall be open, and every person for an injury done him, and his lands, goods, person or reputation, shall have remedy by due course of law.").

**5.** Stockton does not present her argument under this two-part test. Instead, she contends that the statute is unconstitutional because it required her to do the impossible—serve Offenbach within 120 days. No one contends that a medical malpractice action is not a recognized common-law cause of action; therefore, we are concerned only with the second part of the test.

quirement of either paying tax or posting bond equal to twice tax posed significant monetary hurdle before taxpayer could seek judicial review). However, a statute does not violate the open courts provision merely because it presents hurdles to judicial review. *See, e.g., Ledesma v. Shashoua,* No. 03–05–00454–CV, 2007 WL 2214650, at *8–9 (Tex.App.-Austin Aug. 3, 2007, pet. denied) (mem. op.) (no open courts violation where claimant served expert report but trial court found report inadequate and refused extension to correct deficiencies); *Fields v. Metroplex Hosp. Found.,* No. 03–04–00516–CV, 2006 WL 2089171, at *4 (Tex.App.-Austin July 28, 2006, no pet.) (mem. op.) (no open courts violation where claim dismissed when claimant served expert report late because requirement to serve within 120 days not so onerous as to deprive claimant of access to court); *Herrera,* 212 S.W.3d at 455–56, 461–62 (no open courts violation where claimant filed expert report in court but did not serve defendant physician); *Thoyakulathu v. Brennan,* 192 S.W.3d 849, 855–56 (Tex.App.-Texarkana 2006, no pet.) (no open courts violation where facsimile machine malfunctioned on 120th day preventing claimant from timely serving expert report); *Odak,* 934 S.W.2d at 872 (no open courts violation in former article 4590i, which required claimant to either file cost bond or affidavit, because neither requirement was "particularly onerous").

To support her open courts violation argument, Stockton states that she could not locate Offenbach's current residence or place of employment, even after searching public record databases, consulting private investigators, and contacting his insurance carrier. She states that she could not serve him by certified or registered mail because his last known address was incorrect and the letters were returned unclaimed. She also argues that she could not serve Offenbach's attorney because he did not have one during the 120 days. She contends that she diligently pursued an order for substituted service beginning in July 2007, before the 120 days had expired, but that it took ten months to serve him with process by publication because the trial court did not sign the order granting substituted service until 149 days after the petition and expert report were filed. She argues that "even if [I] had tried to serve the expert report *after* service of petition by publication, the trial court's delay in signing the order for substitute of service [sic] negated any chance of serving the report on Appellant's attorney. . . ." She argues that because it was impossible to serve Offenbach within the 120 days, the statute makes her remedy contingent upon an "impossible condition" in violation of the open courts provision. *See Moreno,* 787 S.W.2d at 355. We cannot agree.

The alleged injury occurred in 1989. Stockton filed her lawsuit in 2007. Within a month after filing the original petition, Stockton knew Offenbach could not be served at his last known address, and she filed a motion for substituted service a few weeks later. The motion stated that Stockton has "been unable to obtain personal service on Defendant after due search; diligent inquiry and reasonable effort have been made to secure personal service on Defendant as is evidenced by the attached Officer's Affidavit (Exhibit A). After careful and diligent investigation, the defendant's current address is unknown. Furthermore, it has been confirmed that defendant no longer resides at the last known address, 7204 Winedale Drive, Dallas, Texas 75231." Exhibit A is a "Declaration of Not Found (Due and Diligent Search)" and recites that the process server attempted to serve Offenbach on June 26, 2007, at 12:50 p.m. at 7204 Winedale Drive. It states "the subject has moved