Debbie STOCKTON, as Parent and
Next Friend of William Stockton,
a Minor, Petitioner,

v.

Howard A. OFFENBACH,
M.D., Respondent.

No. 09–0446.

Supreme Court of Texas.

Argued March 25, 2010.

Decided Feb. 25, 2011.

Rehearing Denied May 27, 2011.

Robert J. Talaska, Timothy Lyle Culberson, Talaska Law Firm, P.L.L.C., Houston, for Debbie Stockton.

Michael Alan Yanof, Stan Thiebaud, Stinnett Thiebaud & Remington, L.L.P., Dallas, for Howard A. Offenbach, M.D.

Peter M. Kelly, Kelly Durham & Pittard LLP, Houston, for Amicus Curiae Texas Trial Lawyers Association.

Justice MEDINA delivered the opinion of the Court.

Texas Civil Practice and Remedies Code section 74.351 requires that an expert report be served on each physician or health care provider against whom a health care liability claim is asserted. TEX. CIV. PRAC. & REM.CODE § 74.351(a). The statute further directs the trial court to dismiss the health care liability claim if this report is not served within 120 days of the suit's filing. *Id.* § 74.351(a), (b). In this appeal, the claimant argues that she was not able to serve the expert report within 120 days because the defendant physician could not be found. She further contends that she diligently searched for the physician and that a due diligence exception should apply to extend the statutory deadline or, alternatively, that the statute is unconstitutional as applied to her because it was impossible for her to comply with its deadline. The court of appeals concluded that the statute did not provide for an exception to its deadline under these circumstances and

was not unconstitutional as applied to her. 285 S.W.3d 517. We agree and affirm.

## I

Debbie Stockton filed a health care liability claim against Howard A. Offenbach, M.D., alleging malpractice during the delivery of her son, William. She attached an expert report and curriculum vitae to the petition when it was filed. In her expert's opinion, Offenbach's failure to recommend and perform a caesarian section based on Stockton's risk factors for vaginal delivery resulted in permanent injury to William's left arm at birth.

Stockton alleges that Offenbach was an addict when William was born in July 1989, and the record reflects that he abused prescription drugs for many years. Offenbach subsequently lost his medical license in 2001, and he probably left the state sometime after that. His whereabouts are unknown.

When Stockton filed this claim, she had been looking for Offenbach for several months. She had hired a private investigator and searched various public records to no avail. She had initiated a Rule 202 proceeding seeking information from the hospital where her son was born, but the hospital could not help in locating Offenbach. Stockton also contacted Offenbach's last known liability insurance carrier and provided its adjuster with a copy of the expert report she later attached to her original petition. The carrier also had no information on Offenbach's whereabouts.

Although Stockton did not know where Offenbach might be found, she nevertheless filed her claim on June 13, 2007, and attempted to serve Offenbach at his last known address. That failed, of course, and Stockton filed a motion for citation by publication on July 24. *See* TEX.R. CIV. P. 109. In a verified motion, Stockton stated that Offenbach no longer resided at his

last known address and after "diligent inquiry and reasonable effort" could not be found.

The court, however, did not immediately grant the motion, and several months passed before the court requested additional information. On November 28, 2007, Stockton filed a supplemental motion adding additional detail regarding her efforts to locate Offenbach, and the court granted the motion about three weeks later. Citation by publication finally issued on March 13, 2008, and service was completed on April 9. *See* Tex.R. Civ. P. 116 (requiring publication for four consecutive weeks with first publication to occur at least 28 days before the return day of the citation). The citation advised Offenbach to answer by April 28.

Although Offenbach was still missing, his insurance carrier hired an attorney to defend the suit. This attorney filed Offenbach's answer and later a motion to dismiss. Because Stockton had filed a health care liability claim, she was required by statute to serve Offenbach or his attorney with an expert report within 120 days of filing suit, which in this case was on or before October 11, 2007. *See* Tex. Civ. Prac. & Rem.Code § 74.351(a). Her expert report therefore was due about two months before the trial court authorized service by publication and about six months before such service was completed.

At the hearing on the motion to dismiss, Offenbach's attorney argued that the statute required dismissal because Stockton had not served the expert report within the required 120 days. *See id.* § 74.351(b). Stockton responded that an exception should be made because of the extraordinary difficulty in locating Offenbach. She maintained that it was impossible to serve Offenbach personally during the 120-day period because he could not be found, pointing out further that the trial court

had not granted her motion for substituted service until after the expiration of the 120-day deadline. The trial court agreed that the 120-day deadline should not apply under these circumstances and denied Offenbach's motion to dismiss. At the hearing's conclusion, the court stated that "the intent of the Legislature was fulfilled by both sending the report to the insurance carrier before she filed suit and by filing the report at the time the petition was filed."

### II

Offenbach was allowed to appeal the order denying his motion to dismiss, even though the order was interlocutory. *See* Tex. Civ. Prac. & Rem.Code § 51.014(a)(9) (providing for an interlocutory appeal from an order refusing to dismiss under § 74.351(b)). In this appeal, Stockton argued that it was impossible to serve Offenbach within 120 days of filing her claim, that section 74.351 unreasonably prevented her from pursuing her claim, and that if there were no exception to the statutory deadline, the statute was unconstitutional as applied to her. The court of appeals rejected her arguments, concluding that the statute required the dismissal of her case. The court accordingly reversed the trial court's order and remanded the case with instructions to render judgment in accordance with section 74.351(b). 285 S.W.3d at 524.

Stockton next appealed to this Court. Generally, a court of appeals' decision in an interlocutory appeal is final unless an exception applies, such as a dissent or conflict of decisions. Tex. Gov't Code §§ 22.225(b), (c); 22.001(a)(1)(2); *County of Dallas v. Sempe*, 262 S.W.3d 315, 315 (Tex.2008) (per curiam). Stockton, however, does not need a dissent or conflict in this instance because the court of appeals disposition of the interlocutory appeal is

essentially the final judgment in the case. Stockton therefore does not have to satisfy the jurisdictional requirements for interlocutory appeals in section 22.225 of the Texas Government Code. *Colquitt v. Brazoria Cnty.*, 324 S.W.3d 539, 542 (Tex. 2010) (per curiam). We have jurisdiction in the appeal and have granted her petition for review.

## III

Stockton argues that the court of appeals erred in three respects and that each error is a separate and distinct ground for reversal. First, she contends that the court applied the wrong standard of review. She submits that abuse of discretion is the appropriate standard when reviewing an order, which denies a motion to dismiss under section 74.351(b), and that the court of appeals therefore erred in applying a de novo standard. Next, Stockton argues that the court of appeals erred in construing the statute's 120–day deadline to be absolute and should have instead recognized a "due diligence" exception to the deadline. Finally, she complains that if the deadline is not subject to such an exception, it is unconstitutional, as applied to her, because it was not possible to comply with the deadline in this case. Although we consider her three grounds to be interrelated, we consider each in turn as she has presented the argument.

## A

Stockton contends that the trial court had discretion to extend the time for serving the expert report beyond the 120–day deadline and that its decision should therefore be reviewed for abuse of discretion. She further maintains that all of the evidence supports the trial court's decision to extend the expert report deadline, but does not otherwise elaborate on the conclusive nature of this evidence. Offenbach, on the other hand, argues that de novo is the appropriate standard because the trial court did not have discretion to misapply section 74.351, which under the circumstances of this case did not permit the trial court discretion to extend the 120–day deadline.

A claimant must comply with Chapter 74 of the Civil Practice and Remedies Code, when asserting a health care liability claim. Among the statute's requirements is the expert report requirement, which directs a claimant to "serve" an expert report and the expert's curriculum vitae on each party or party's attorney within 120 days of filing suit. TEX. CIV. PRAC. & REM. CODE § 74.351(a).[1] Compliance with this provision is mandatory; the claimant must serve an expert report to proceed with a health care liability claim. *Id.* § 74.351(b). If the claimant has not served the expert report by the statutory deadline and the parties have not agreed to extend that deadline,[2] "the court, on the motion of the

1. Before September 1, 2005, section 74.351 required an expert report to be served "not later than the 120th day after the date the *claim* was filed." Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 10.01, 2003 Tex. Gen. Laws 847, 875, (emphasis added), *amended by* Act of May 18, 2005, 79th Leg., R.S., ch. 635, § 1, 2005 Tex. Gen. Laws 1590, 1590. This version applies in this case because the underlying cause of action accrued before September 1, 2005. *See* Act of May 18, 2005, 79th Leg., R.S., ch. 635, § 2, 2005 Tex. Gen. Laws 1590, 1590. The current version requires the expert report to be served "not later than the 120th day after the date the *original petition* was filed." TEX. CIV. PRAC. & REM.CODE § 74.351 (emphasis added). This change is of no practical significance to the issues before us and thus we refer to the current statute even though the previous version applies in this case.

2. The statute authorizes an extension of the 120–day period "by written agreement of the affected parties." TEX. CIV. PRAC & REM.CODE § 74.351(a).

affected physician or health care provider, shall, subject to [an exception[3] not relevant here]," dismiss the claim with prejudice. *Id.* § 74.351(b).

Chapter 74 replaced the Medical Liability Insurance Improvement Act, formerly found in article 4590i of the Texas Revised Civil Statutes. Article 4590i required that the expert report be "furnished" to opposing counsel within 180 days of filing suit, but Chapter 74 shortened the deadline to 120 days and now requires the claimant to "serve" (rather than "furnish") the expert report "on each party or the party's attorney." *Compare* TEX. CIV. PRAC. & REM.CODE § 74.351(a) *with* TEX.REV.CIV. STAT. art. 4590i, § 13.01(d)(1) (repealed). Several courts have interpreted the Legislature's use of the word "serve" to require compliance with Texas Rule of Civil Procedure 21a. *Univ. of Tex. Health Science Ctr. at Houston v. Gutierrez,* 237 S.W.3d 869, 872 (Tex.App.-Houston [1st Dist.] 2007, pet. denied); *Herrera v. Seton Nw. Hosp.,* 212 S.W.3d 452, 459 (Tex.App.-Austin 2006, no pet.); *Kendrick v. Garcia,* 171 S.W.3d 698, 703–04 (Tex.App.-Eastland 2005, pet. denied). Rule 21a authorizes service by one of four methods: (1) in person, by agent, or by courier receipted delivery, (2) by certified or registered mail to the party's last known address, (3) by telephonic document transfer to the recipient's current telecopier number, or (4) by such other manner as the court in its discretion may direct. TEX.R. CIV. P. 21a.

Under an abuse of discretion standard, the appellate court defers to the trial court's factual determinations if they are supported by evidence, but reviews the trial court's legal determinations de novo.

*In re Labatt Food Serv., L.P.,* 279 S.W.3d 640, 643 (Tex.2009). Whether the statute permits additional time beyond the 120–day deadline or is unconstitutional, as applied, are legal questions. *See Galbraith Eng'g Consultants, Inc. v. Pochucha,* 290 S.W.3d 863, 867 (Tex.2009) (noting that statutory construction is a legal question). The court of appeals therefore appropriately reviewed the case de novo.

**B**

Stockton next argues that if the service requirement in Chapter 74 incorporates Rule 21a, it should also incorporate the due diligence doctrine that courts have attached to that rule. Under this doctrine, a plaintiff, who files a petition within the limitations period but does not complete service until after the statutory period has expired, is entitled to have the date of service relate back to the date of filing, if the plaintiff has exercised diligence in effecting service. *Proulx v. Wells,* 235 S.W.3d 213, 214 (Tex.2007) (per curiam); *Ricker v. Shoemaker,* 81 Tex. 22, 16 S.W. 645, 646–47 (1891). Stockton submits that in the same way due diligence in the service of process can interrupt the running of the statute of limitations, so too should due diligence in the service of the expert report interrupt the running of the statutory 120–day expert report deadline.

Offenbach responds that Chapter 74's 120–day deadline may be extended under only two circumstances: (1) "by written agreement of the affected parties" or (2) by a court order, which permits the claimant to cure a deficient, but otherwise timely served, expert report. TEX. CIV. PRAC. & REM.CODE § 74.351(a), (c). Neither cir-

---

**3.** Section 74.351(c) authorizes the trial court to grant the claimant one 30–day extension to cure a deficient expert report, if the deficient report is served by the statutory deadline. TEX. CIV. PRAC. & REM.CODE § 74.351(c). The exception does not apply here because Stockton did not serve a deficient expert report on or before the expiration of the 120–day period.

cumstance applies here. Offenbach concludes therefore that the trial court had no authority or discretion to extend the expert report deadline. Moreover, he submits that a comparison of Chapter 74 to its predecessor, article 4590i, confirms the Legislature's intent to limit trial court discretion over the expert report deadline because the predecessor statute was more lenient in extending that deadline.

Under article 4590i, a plaintiff could obtain an extension, even when no report was provided by the deadline, if the plaintiff could show an "accident or mistake" in failing to furnish a timely report. *See* Tex.Rev.Civ. Stat. art. 4590i, § 13.01(g) (repealed). Chapter 74 eliminated this provision, and Offenbach submits that the only basis for obtaining a court-ordered extension under the current statute is through a motion to cure a timely served, but deficient, expert report. Tex. Civ. Prac. & Rem.Code § 74.351(c). Moreover, Offenbach submits that implying a due diligence exception to the statutory deadline ignores another part of Chapter 74, which provides that "[i]n the event of a conflict between this chapter and another law, including a rule of procedure or evidence or court rule, this chapter controls to the extent of the conflict." *Id.* § 74.002.

Section 74.001 provides, however, that "[a]ny legal term or word of art used in this chapter, not otherwise defined in this chapter, shall have such meaning as is consistent with the common law." *Id.* § 74.001(b). The word "served" is not defined in Chapter 74, but its meaning under common law includes the notions of due diligence and relation back. And if Chapter 74 incorporates these concepts through its use of the word "served", no conflict, as prohibited by section 74.002, would exist. But even assuming that a due diligence exception applies to service completed after Chapter 74's expert report deadline,

we are not persuaded that the evidence here is legally sufficient to raise the issue. *See Gant v. DeLeon,* 786 S.W.2d 259, 260 (Tex.1990) (per curiam) (holding that due diligence may be lacking as a matter of law based on unexplained lapses in activity).

Stockton knew of the difficulty in serving Offenbach personally, when she filed her claim on June 13, 2007. She accordingly filed a motion for substituted service about 40 days later, seeking the court's permission to cite Offenbach by publication. Had citation promptly issued, sufficient time remained for service by publication before the expiration of the 120–day deadline. *See* Tex.R. Civ. P. 116 (requiring first publication to commence at least 28 days before the return day of the citation).

The record reflects, however, that after filing the motion for substituted service on July 24, nothing was done in the case until November 28, at which time Stockton supplemented her motion. During this four month period, the deadline for serving the expert report passed.

Stockton asks that we view the 120–day period for serving the expert report like a limitations period to which the due diligence doctrine should apply. But using Stockton's analogy to limitations and the due diligence doctrine, her four month inactivity here would be analogous to a plaintiff in a tort action waiting two years for the court to act on a pending motion for substituted service. Recently, we concluded in a tort case that an unexplained eight-month gap in service activity established a lack of diligence as a matter of law. *Ashley v. Hawkins,* 293 S.W.3d 175, 180–81 (Tex.2009).

Stockton asserts, however, that something was done during this four-month period of apparent inaction. She submits that her attorney's office repeatedly called the trial court clerk to inquire about the order. As proof, Stockton points to the

affidavit of Sandra Rylee,[4] who is not identified but presumably is an employee of Stockton's attorney. Rylee avers that she had repeated phone conversations with the court's clerk during and after the 120–day period. The affidavit provides the following explanation of those calls:

> After filing the motion for substitute service's (sic) citation on July 19, 2007, I had repeated phone conversations with the Clerk of the 298th Court over the next several months, following up with the court to see when our order would be signed. It wasn't until November 2007, when we received notice from the court that additional information needed to be provided regarding locating Dr. Offenbach in a supplemental motion, before the judge would sign the order. We provided the additional information in a supplemental motion for substitute service's (sic) citation on November 20, 2007.
>
> After filing out (sic) supplemental motion, I then followed up on numerous occasions with the court by phone to see when the order would be signed. We received the order saying we could serve by publication on January 24, 2008.

Neither the pending motion nor this affidavit indicate that the trial court was apprised of the 120–day deadline or its significance to the pending motion. Acting under no apparent sense of urgency, the trial court granted the motion for substituted service on December 20, 2007, more than two months after the expiration of the expert report deadline on October 11. And according to Rylee's affidavit, Stockton's attorney did not receive the court's order for over a month after it was signed.

Stockton suggests that the trial court was at fault for the delay, stating that she "was essentially at the mercy of the trial court" and further "that it was the trial court's extended 4–month delay in granting an order for substitute service that prevented Petitioner from serving Respondent by publication." But the record indicates that to be only a part of the problem.

Equally significant is the fact that the motion for substituted service did not convey any sense of urgency by referencing the expert report deadline and requesting immediate relief. Nor is there any evidence that the trial court was otherwise apprised of the service deadline. Moreover, the record does not suggest any obstinance on the trial court's part. To the contrary, once the problem was called to the court's attention, it declined to dismiss Stockton's claim even though the expert report had not been served timely.[5] Had the deadline been called to the court's attention sooner, we might reasonably assume that it would have acted on the motion promptly. We thus reject the notion that the trial court was solely to blame for the delay in service or that a fact issue was raised concerning Stockton's due diligence in the matter.

## C

▮ Finally, Stockton argues that the expert report deadline, as applied to her, violates the open courts provision in the Texas Constitution. TEX. CONST. art. I, § 13. The open courts provision prohibits the Legislature from making "a remedy by due course of law contingent upon an im-

---

4. Stockton included this affidavit as an exhibit to her response to Offenbach's motion to dismiss.

5. The trial court had these words at the conclusion of the hearing on the motion to dismiss: "I know the statute says what it says. The Dallas Court probably is going to tell me, nice try, Judge Tobolowsky; we are not going to agree with you. But I am going to deny the motion."

possible condition." *Diaz v. Westphal,* 941 S.W.2d 96, 100 (Tex.1997) (quoting *Moreno v. Sterling Drug, Inc.,* 787 S.W.2d 348, 355 (Tex.1990)). Stockton submits that it was not possible to comply with the statute's deadline because there was no one to serve with the expert report during the first 120 days of her lawsuit. The statute directs that the expert report is to be served on the "party or the party's attorney," TEX. CIV. PRAC. & REM.CODE § 74.351(a), and Stockton submits that a defendant named in a lawsuit does not become a party before service or appearance. *See Mapco, Inc. v. Carter,* 817 S.W.2d 686, 687 (Tex. 1991) (per curiam) (stating that merely being named as a defendant does not make one a party to the lawsuit). Stockton concludes that it was impossible to serve the expert report within 120 days because of the doctor's disappearance and the trial court's delay.

Offenbach responds that there is no evidence that Chapter 74, as applied to Stockton, presented an impossible condition to the pursuit of her claim. Eighty days remained to serve the expert report after she filed her motion for substituted service, yet nothing was done. Offenbach suggests that Stockton's inaction during this period, rather than the statute, caused her to miss the deadline. The court of appeals agreed, concluding there was neither evidence that compliance with section 74.351(a) was impossible nor evidence that the statute prevented Stockton from pursuing her claim. 285 S.W.3d at 524.

We presume that when enacting legislation, the Legislature intends to comply with the state and federal constitutions, TEX. GOV'T CODE § 311.021(1), and "we are obligated to avoid constitutional problems if possible." *Brooks v. Northglen Ass'n,* 141 S.W.3d 158, 169 (Tex. 2004). Thus, if presented with a choice between an impossible condition and a due diligence exception we would, of course, choose the latter. Stockton's argument that the statute is unconstitutional as applied to her then is merely a variation of her preceding argument for a due diligence exception to the expert report deadline. *See Yancy v. United Surgical Partners Int'l, Inc.,* 236 S.W.3d 778, 785–86 (Tex.2007) (holding that due diligence is a component of an open courts complaint); *Shah v. Moss,* 67 S.W.3d 836, 847 (Tex. 2001) (same). Despite the statute's apparent inflexible deadline, it cannot apply to create an impossible condition to the pursuit of a health care liability claim. *Diaz,* 941 S.W.2d at 100.

The open court's provision "assures that a person bringing a well-established common-law cause of action will not suffer unreasonable or arbitrary denial of access to the courts." *Yancy,* 236 S.W.3d at 783. "[I]t is, quite plainly, a due process guarantee." *Sax v. Votteler,* 648 S.W.2d 661, 664 (Tex.1983). But to claim an open court's violation, the person must raise "a fact issue establishing that he did not have a reasonable opportunity" to be heard. *Yancy,* 236 S.W.3d at 785. And "[a] plaintiff may not obtain relief under the open courts provision if he does not use due diligence [in pursuing his claim]." *Shah,* 67 S.W.3d at 847. Our analysis of Stockton's preceding due diligence issue accordingly forecloses her related open courts challenge.

The application of the statute in this case, however, is unfortunate and, in part, a consequence of the Legislature's decision to calculate the 120–day expert report deadline from the date of filing the suit rather than its service on the defendant. The statute appears to assume that serving a physician or other health care provider will be simple and straightforward. That, however, is not always the case, and when complications arise, as here, section

74.351(a) presents a very small window through which to serve both the lawsuit and the expert report.

 We understand that the deadline is intended to weed out frivolous health care liability claims early in the proceeding. *See Lewis v. Funderburk*, 253 S.W.3d 204, 205 (Tex.2008) (noting efforts of Legislature "to stem frivolous suits against health care providers"); *Am. Transitional Care Cntrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 878 (Tex.2001) (noting that one purpose of the expert-report requirement is to deter frivolous claims). That purpose would not be sacrificed, however, by calculating the expert report deadline from the date the physician or other health care provider becomes a party to the proceeding through service or appearance. Calculating the deadline from that date would also better fit the statute's requirement that the expert report is to be served on "each party or the party's attorney." TEX. CIV. PRAC. & REM.CODE § 74.351(a). The Legislature, however, has chosen to commence the 120–day period from the date of filing, and "we are not free to rewrite the statutes to reach a result we might consider more desirable, in the name of statutory construction." *Public Utility Comm'n of Tex. v. Cofer*, 754 S.W.2d 121, 124 (Tex.1988). When a statute is unambiguous, our role is to apply it as written despite its imperfections. *Leland v. Brandal*, 257 S.W.3d 204, 206 (Tex. 2008); *see also Simmons v. Arnim*, 110 Tex. 309, 220 S.W. 66, 70 (1920) (noting that "[c]ourts must take statutes as they find them"); *but see Univ. of Tex. S.W. Med. Ctr. v. Loutzenhiser*, 140 S.W.3d 351, 356 (Tex.2004) (noting that statutes should not be read to create absurdities).

\*    \*    \*    \*    \*    \*

The court of appeals concluded that there was no evidence that section 74.351(a)'s expert report requirement prevented Stockton from pursuing her claim or that the statute was unconstitutional as applied to her. We agree and affirm the court of appeals' judgment.