Opinion issued June 25, 2024



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-22-00579-CV

———————————

### LAKEISHA DEMERSON, MD, Appellant

### V.

### KIESTA SMITH, INDIVIDUALLY AND AS NEXT FRIEND OF XXXXXX XXXXXX, A MINOR, Appellee

On Appeal from the 270th District Court
Harris County, Texas
Trial Court Case No. 2022-01500

## OPINION

Appellant Lakeisha Demerson, M.D. performed a circumcision on Appellee Kiesta Smith's infant son. Alleging negligence in the performance of the procedure, Smith filed a health care liability lawsuit against Demerson, individually and on behalf of her minor son. Demerson filed a motion to dismiss

under Section 74.351(b) of the Texas Medical Liability Act for failure to serve a timely expert report, which the trial court denied.

Demerson filed the present interlocutory appeal challenging the denial of her motion to dismiss. She argues the trial court erred in denying her motion because Smith failed to serve a timely expert report and curriculum vitae as required by Section 74.351(a) and Texas Rule of Civil Procedure 21a. Demerson argues that Smith's "mere sending" of the expert report and CV to her electronic filing service provider does not constitute service, and further that Smith's pre-suit emailing of the expert report to Demerson's professional liability insurance carrier was insufficient to effectuate service under Section 74.351(a).

Because we conclude Smith timely served her expert report, we affirm the trial court's order.

## Background

On February 27, 2020, Appellant Lakeisha Demerson, M.D. performed a circumcision on the seventeen-day-old son of Appellee Kiesta Smith. Smith alleges that Demerson improperly utilized a Plastibell technique for the circumcision, resulting in significant injuries to her son, including removal of the "skin along the entire length of the [child's] penis" and scar tissue so "severe that it [] caused stricture of [his] urethra." Smith alleges that her minor son will need to have recurring medical treatments, including plastic surgery and skin grafts to

2

address his injuries. Smith filed a health care liability lawsuit against Demerson alleging negligence and gross negligence and seeking to recover damages for her son's injuries.

Prior to filing suit, Smith's counsel sent Demerson a Notice of Claim pursuant to Section 74.051 of the Texas Medical Liability Act.[1] Demerson's professional liability insurance carrier, the Texas Medical Liability Trust ("TMLT"), faxed a letter to Smith's counsel informing him that Demerson had forwarded Smith's Notice of Claim to TMLT "for response" and evaluation of Smith's claim. TMLT requested that Smith's counsel provide certain documents to TMLT including, among other things, Smith's "specific allegations with regard to [Demerson's] acts or omissions which [she] claimed constitute[d] negligence" so that TMLT could "properly evaluate her claim."

Smith's counsel emailed an expert report from Dr. Scott Schams to TMLT on January 7, 2022. That same day, TMLT responded via email stating that it would "forward a copy of the expert report to Dr. Demerson for review" and assign the "case to Marikay Evans/Luccia & Evans" for handling. Three days later, on January 10, 2022, Smith filed her health care liability suit against Demerson.

---

[1] Demerson does not dispute that Smith complied with Section 74.051. *See* TEX. CIV. PRAC. & REM. CODE § 74.051 ("Any person . . . asserting a health care liability claim shall give written notice of such claim by certified mail, return receipt requested, to each physician . . . against whom such claim is being made at least 60 days before the filing of a suit in any court of this state based on a health care lability claim.")

Demerson filed her original answer electronically on February 9, 2022. Her counsel, Luccia & Evans, filed the answer electronically using the electronic filing service provider ("EFSP") eFileTexas.gov.[2] Demerson's answer included a signature block with the email address, fax number, and mailing address for each of her attorneys. The answer also included an "Automated Certificate of eService" created by the "efiling system" stating that the "filer served this document" on three listed attorneys for Smith "via email generated by the efiling system." The District Clerk accepted Demerson's electronic filing and time stamped the answer "2/9/2022 12:40 pm." That same day, at 3:40 pm, Smith's counsel used the EFSP MyFileRunner.com to serve Demerson with Schams' expert report and curriculum vitae via the EFM eFileTexas.gov—the same EFM Demerson's counsel used earlier that day to file her answer electronically.[3] The February 9, 2022 cover letter

---

[2] Electronic filing in Texas is facilitated by electronic filing service providers ("EFSPs") who are operated by independent companies. An EFSP vendor provides web portals for attorneys and other filers to use to submit documents into an Electronic Filing Manager (EFM) system. The EFSP vendor collects filings from a filer and transmits them electronically to the EFM. The EFM is the system that accepts electronic filings from EFSPs and distributes them to the correct court. Court clerks log into the EFM to review and accept electronic filings. If an electronic filing is accepted by the clerk of the court, the clerk provides an electronic timestamp notification to the filer for the accepted document. The EFM Texas courts use is eFileTexas.gov. *See* https://efiletexas.gov, last visited June 17, 2024. The EFSP Demerson used to file her answer electronically on February 9, 2022 is eFileTexas.gov, and that EFSP transmitted her answer to the EFM eFileTexas.gov on the same day.

[3] The EFM system may be used to exchange documents between parties without filing the documents through the courts. *See* https://efiletexas.gov, last visited June 17, 2024. Smith's EFSP (MyFileRunner.com) and Smith's EFSP

4

for Schams' expert report and CV is addressed to Demerson's counsel—Mary Kathleen Evans—the same counsel TMLT advised it would retain for defense of Smith's claim.

On June 14, 2022, Demerson filed a Motion to Dismiss Smith's health care liability lawsuit arguing dismissal with prejudice was proper because Smith had not served an expert report within 120 days after Demerson filed her original answer as required under Section 74.351(a) of the Texas Medical Liability Act. Demerson did not dispute receiving the expert report Smith emailed to TMLT on January 7, 2022. To the contrary, Demerson attached that report as an exhibit to her Motion to Dismiss. Demerson instead argued that because Smith had not served the report on Demerson or her counsel directly, and TMLT was not "an authorized agent" to accept service of the report on her behalf, Smith had not complied with Section 74.351(a).

The day after Demerson filed her Motion to Dismiss, Smith served Demerson with Schams' expert report and CV, again using the EFSP MyFileRunner.com. She then filed a response to Demerson's Motion to Dismiss arguing that Smith had first served Demerson with Schams' expert report "presuit through [Demerson's] duly authorized agent" TMLT, and a second time "through the electronic filing manager, eFileTexas.gov, and [Smith's counsel's] electronic

(MyFileTexas.gov) are both certified to file through the EFM EFileTexas.gov. *See id.*

5

filing service provider, MyFileRunner.com, just hours after [Demerson] filed and served her Original Answer using eFileTexas.gov." Smith further argued that even if TMLT were not Demerson's duly authorized agent, "service was timely effected" because Demerson actually received the report from TMLT, as evidenced by the fact Demerson attached to her motion both the expert report and Smith's counsel's email to TMLT transmitting the report.

Demerson replied arguing that TMLT was not her duly authorized agent for service. And even if it were, she argued service was deficient because Section 74.351(a) does not authorize service on a duly authorized agent. Demerson alternatively argued that even if service on TMLT had been proper, Smith still failed to comply with Section 74.351(a) because she failed to attach Schams' CV to the expert report and the CV "is an integral element of Chapter 74.351." Demerson last argued that notwithstanding her actual receipt of Schams' expert report, dismissal was proper because Section 74.351(a) requires that either she or her counsel be served directly, and Smith's attempt to serve Demerson with the expert report and CV on February 9, 2022 through the EFSP MyFileRunner.com was insufficient because neither Demerson nor her counsel received the served documents. Demerson argued that Smith had not provided proof of service reflecting she served the expert report and CV on Demerson on February 9, 2022.

The trial court held a hearing on Demerson's Motion to Dismiss and denied

the motion orally at the end of the hearing.  The trial court signed a written order

denying the Motion to Dismiss on July 20, 2022.  Two days later, Demerson filed a

motion for rehearing, and the trial court denied the motion on August 22, 2022.

This interlocutory appeal ensued.[4]

**Standard of Review and Applicable Law**

The Texas Medical Liability Act ("Act" or "Chapter 74") governs the filing

of health care liability claims against physicians or health care providers.  Section

74.351(a) of the Act requires that claimants pursuing a healthcare liability claim

serve an expert report on each physician or healthcare provider against whom a

health care liability claim is asserted.  Section 74.351(a) provides:

> In a health care liability claim, a claimant shall, not later than the
> 120th day after the date each defendant's original answer is filed,
> serve on that party or the party's attorney one or more expert reports,
> with a curriculum vitae of each expert listed in the report for each
> physician or health care provider against whom a liability claim is
> asserted. The date for serving the report may be extended by written
> agreement of the affected parties.

TEX. CIV. PRAC. & REM. CODE § 74.351(a).[5]  If the expert report with respect to a

given defendant is not "served" within 120 days after the defendant's original

answer is filed, the court, on the motion of the defendant physician or health care

---

[4]      Section 51.014(a)(9) of the Civil Practice and Remedies Code provides for an
interlocutory appeal of an order denying "all or part of the relief sought by a
motion under Section 74.351(b)[.]"    TEX. CIV. PRAC. & REM. CODE
§ 51.014(a)(9).

[5]      We cite to the version of the Act in effect when the events giving rise to this
litigation occurred.  The current version is substantially the same.

7

provider, "shall" dismiss the claim with prejudice and award reasonable attorney's fees and costs of court incurred by the physician or health care provider. *Id.* § 74.351(b).

We generally review a ruling on a Section 74.351(b) motion to dismiss for abuse of discretion. *Univ. of Tex. Health Sci. Ctr. at Houston v. Gutierrez*, 237 S.W.3d 869, 871 (Tex. App.—Houston [1st Dist.] 2007, pet. denied); *Intracare Hosp. N. v. Campbell,* 222 S.W.3d 790, 794 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (citing *Estate of Regis ex rel. McWashington v. Harris Cnty. Hosp. Dist.,* 208 S.W.3d 64, 67 (Tex. App.—Houston [14th Dist.] 2006, no pet.)). A trial court abuses its discretion if it acts in an arbitrary or unreasonable manner without reference to guiding rules or principles. *Jelinek v. Casas*, 328 S.W.3d 526, 539 (Tex. 2010) (quoting *Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002)). When reviewing matters committed to a trial court's discretion, we may not substitute our own judgment for that of the trial court. *Bowie Mem'l Hosp.*, 79 S.W.3d at 52.

A trial court does not abuse its discretion merely because it decides a discretionary matter differently than an appellate court would in a similar circumstance. *Harris Cty. Hosp. Dist. v. Garrett*, 232 S.W.3d 170, 176 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (citing *Gray v. CHCA Bayshore L.P.,* 189 S.W.3d 855, 858 (Tex. App.—Houston [1st Dist.] 2006, no pet.)). But a trial court

has no discretion in determining what the law is or in applying the law to the facts. *See Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992) (orig. proceeding). When a matter presented to the court involves a purely legal matter, we review the trial court's ruling *de novo*. *Gutierrez*, 237 S.W.3d at 871.

**Analysis**

Demerson argues that the trial court erred in denying her Motion to Dismiss because Smith failed to serve Schams' expert report and CV as required under Section 74.351(a) and Texas Rule of Civil Procedure 21a. Demerson advances several arguments in support of her position. She first argues that Smith's pre-suit email to TMLT attaching Schams' expert report did not constitute service under Section 74.351(a) because TMLT is not Demerson's duly authorized agent. Even though she received the expert report from TMLT, Demerson argues that her receipt of the report is insufficient because under Section 74.351(a), Smith was required to serve the report on Demerson or her counsel directly. Demerson further contends that even if service on TMLT were sufficient, Smith failed to attach Schams' CV to her email correspondence to TMLT and thus service was deficient. Last, Demerson argues that Smith's "mere sending" of the expert report and CV to her EFSP MyFileRunner.com on February 9, 2022, did not constitute service because neither Demerson nor her counsel received the served documents, and Smith cannot provide proof of service.

Smith responds that she twice served her expert report in compliance with Section 74.351(a). She argues that she first served Demerson with Schams' expert report pre-suit on January 7, 2022, when she emailed the expert report to Demerson's duly authorized agent TMLT. Even if TMLT is not Demerson's duly authorized agent, Smith argues that service was proper because Demerson actually received the expert report from TMLT. Smith explains that the Texas Supreme Court twice has confirmed that pre-suit service of an expert report is permitted under Section 74.351(a), and she further argues that failure to include Schams' CV in her email of January 2022 is without consequence because Schams' qualifications were apparent from the expert report, and she was thus not required to attach a separate CV to the report.

Smith separately argues that on February 9, 2022, a mere three hours after Demerson filed her answer electronically via the EFM MyFileTexas.gov, she served Demerson with Schams' expert report and CV via MyFileTexas.gov—the same EFM Demerson used earlier that day to file her answer electronically. Smith explains that she served Schams' expert report and CV through the EFM MyFileTexas.gov using her EFSP MyFileRunner.com, and that service of the

10

expert report and CV was complete upon transmission of the report and CV to her EFPS MyFileRunner.com.[6]

We agree with Smith that she complied with the service requirements under Section 74.351(a) and Rule 21a.

## A.    The Pre-Suit Expert Report

The Texas Supreme Court twice has held that an expert report may be served before a health care liability suit is filed. *Hebner v. Reddy*, 498 S.W.3d 37 (Tex. 2016); *Ransom v. Eaton*, 503 S.W.3d 411, 412 (Tex. 2016). In *Hebner*, the Texas Supreme Court held that Chapter 74 "does not prohibit the plaintiff from serving a report on a party before filing the petition," and it declined to "write such a requirement into the statute's language." 498 S.W.3d at 42. As the court explained, "[p]re-suit service of an expert report, though not required, can only further the statute's objective of encouraging and enabling parties to settle healthcare-liability claims without resorting to the lengthy and expensive litigation process." *Id.*; *see also Ransom*, 503 S.W.3d at 412 (holding expert report served on dentist concurrently with pre-suit notice complied with statute).

---

[6]    The expert report Smith served on February 9, 2022 is identical to the one she served on January 7, 2022, except that the child's name is redacted on the February 9, 2022 report and a separate CV is attached to that report.

11

### 1. Service on Duly Authorized Agent

Demerson does not dispute that pre-suit service of an expert report is permitted under Section 74.351(a). Rather, she argues that pre-suit service was not effective here because the proper entity was not served with the expert report. Citing to the language in Section 74.351(a), Demerson argues that a claimant must serve an expert report on the defendant "party or the party's attorney." Because TMLT fits neither category, she argues service on TMLT was improper. We disagree.

Chapter 74 aims to "identify and eliminate frivolous health care liability claims expeditiously, while preserving those of potential merit." *Samlowski v. Wooten*, 332 S.W.3d 404, 410 (Tex. 2011). Section 74.351(a) was designed to meet that purpose "by requiring a claimant early in litigation to produce the opinion of a suitable expert that h[er] claim has merit." *Columbia Valley Healthcare Sys. L.P. v. Zamarripa*, 526 S.W.3d 453, 460 (Tex. 2017) (quoting *Scoresby v. Santillan*, 346 S.W.3d 546, 552 (Tex. 2011)). The expert report requirement of Chapter 74 serves to (1) inform the defendant of the specific conduct a plaintiff has called into question; and (2) provide a basis for the trial court to conclude that the plaintiff's claim has merit. *Hebner*, 498 S.W.3d at 41.

"The primary goal when interpreting a statute is to effectuate 'the Legislature's intent as expressed by the plain and common meaning of the statute's

words.'" *Id.* (quoting *F.F.P. Operating Partners, L.P. v. Duenez,* 237 S.W.3d 680, 683 (Tex. 2007)).  Where the statutory text is clear, that "text is determinative of legislative intent unless the plain meaning of the statute's words would produce an absurd result."  *Id.*  But when the language is susceptible of two constructions, "'one of which will carry out and the other defeat [its] manifest object, [the statute] should receive the former construction.'"  *Id.* (citing *Citizens Bank of Bryan v. First State Bank*, 580 S.W.2d 344, 348 (Tex. 1979) (alteration in original).

Section 74.351(a) provides that

In a health care liability claim, a claimant shall, not later than the 120th day after the date each defendant's original answer is filed, *serve on that party or the party's attorney* one or more expert reports, with a curriculum vitae of each expert listed in the report for each physician or health care provider against whom a liability claim is asserted. . . .

TEX. CIV. PRAC. & REM. CODE § 74.351(a) (emphasis added).  Although Section 74.351(a) does not define the term "serve," several courts, including this Court, have held that "the Legislature intended for [health care liability] claimants to comply with [R]ule 21a [of the Texas Rules of Civil Procedure] to fulfill the requirements of section 74.351(a)."  *Gutierrez*, 237 S.W.3d at 872; *see also Zanchi v. Lane*, 408 S.W.3d 373, 380 n.4 (Tex. 2013) (noting "[s]everal courts of appeals have interpreted the word 'serve' in section 74.351(a) to require compliance with

13

Rule 21a" and listing cases); *Stockton v. Offenbach*, 336 S.W.3d 610, 615 (Tex. 2011) (same).[7, 8]

Demerson acknowledges that service of the expert report must comply with Rule 21a. Rule 21a(a) states in pertinent part:

> *Methods of Service*. Every notice required by these rules, and every pleading, plea, motion, or other form of request required to be served under Rule 21, other than the citation to be served upon the filing of a cause of action and except as otherwise expressly provided in these rules, may be served by delivering a copy to the party to be served, *or the party's duly authorized agent or attorney of record . . . .*

TEX. R. CIV. P. 21a(a) (emphasis added). Thus, under Rule 21a(a), service may be achieved by delivering a copy of the served document to the party to be served *or* the party's (1) duly authorized agent *or* (2) attorney of record.

Notwithstanding, Demerson insists that dismissal is warranted because Section 74.351(a) requires service on a party or that party's attorney only. But dismissal of Smith's health care liability claim on these grounds would be contrary to the term "served" as expressed in Rule 21a and contrary to Rule 1 of the Texas

---

[7]     The Supreme Court in *Stockton* did not expressly hold that service in Chapter 74 suits must comply with Rule 21a. However, it implied as much, describing the manners in which Rule 21a authorizes service. *Stockton v. Offenbach*, 336 S.W.3d 610, 615 (Tex. 2011).

[8]     *See also Abilene Reg'l Med. Ctr. v. Pierce*, 684 S.W.3d 564, 570 (Tex. App.—Eastland 2024, pet. filed) ("Although the term 'serve' is not defined in the TMLA, the context in which the term is used in Section 74.351(a) is synonymous and consistent with the methods of service that are required by and enumerated in Rule 21a of the Texas Rules of Civil Procedure.") (citing cases).

14

Rules of Civil Procedure, which directs courts to construe rules of procedural liberally. *See* TEX R. CIV. P. 1.[9]  Although Section 74.002 of the Act provides that "[i]n the event of a conflict between this chapter and another law, including a rule of procedure . . . this chapter controls to the extent of a conflict," we do not find the service requirements of Rule21a to be in conflict with Section 74.351(a).  *See* TEX. CIV. PRAC. & REM. CODE § 74.002.

Section 74.351(a) provides that a claimant shall serve an expert report on the party *or* the party's attorney, and Rule 21a further clarifies that service on *the party* may be achieved by serving that party directly or by serving either *the party's* duly authorized agent or attorney of record.  Thus, Section 74.351(a) and Rule 21a read together merely clarify the methods by which a claimant may "serve" the expert report on a party under the Act.

Rule 21a(a) authorizes several methods of service.  A party may serve a document (1) electronically through the electronic filing manager or it may serve a document (2) in person, by mail, by commercial delivery service, by fax, by email, or by such other manner as the court in its discretion may direct.  TEX. R. CIV.

---

[9]  Rule 1 of the Texas Rules of Civil Procedure states: "The proper objective of rules of civil procedure is to obtain a just, fair, equitable and impartial adjudication of the rights of litigants under established principles of substantive law.  To the end that this objective may be attained with as great expedition and dispatch and at the least expense both to the litigants and to the state as may be practicable, these rules shall be given a liberal construction."  TEX. R. CIV. P. 1.

P. 21a(a)(1)-(2). Smith served her expert report pre-suit on Demerson's duly authorized agent—TMLT—via email on January 7, 2022. She thus complied with the service requirements of Rule 21a(a) and Section 74.351(a).

Relying on *Stockton v. Offenbach*, 336 S.W.3d 610 (Tex. 2011) ("*Stockton*"), Demerson argues that serving an expert report pre-suit on a defendant's professional liability insurance carrier does not meet the service requirement of the Act. According to Demerson, the Texas Supreme Court in *Stockton* "held that service [of an expert report] on a defendant doctor's insurance carrier even when the defendant doctor could not be located did not meet the service requirements" of Section 74.351(a). She thus argues that "the law is well-settled in *Stockton* that Chapter 74's plain language does not authorize the expert report to be served on the party's insurance carrier." But the Supreme Court in *Stockton* made no such ruling.

The appeal in *Stockton* stemmed from a trial court's denial of a physician's Chapter 74 motion to dismiss a health care liability claim filed against him. The plaintiff ("Stockton") sued the defendant physician ("Offenbach") alleging medical malpractice during the vaginal delivery of her son. *Id*. at 612. She alleged that Offenbach's failure to recommend and perform a caesarian section had resulted in permanent injury to her newborn son. *Id.* Smith alleged that Offenbach was an addict when her son was born, that he "abused prescription drugs for many years,"

16

that he eventually lost his medical license, and that "his whereabouts [were] unknown." *Id.*

Stockton searched for Offenbach for several months before filing suit. *Id.* She hired a private investigator, searched public records, and initiated a Rule 202 proceeding to no avail. *Id.* She also "contacted Offenbach's last known liability insurance carrier and provided its adjuster with a copy of [her] expert report[.]" *Id.* But the carrier "had no information on Offenbach's whereabouts." *Id.* Stockton eventually filed suit attaching the same expert report and a curriculum vitae to her petition. She attempted to serve Offenbach at his last known address and when that proved unsuccessful, she requested authorization from the trial court to effect service by publication. *Id.* The trial court ultimately granted Stockton's request and she completed service on Offenbach by publication. *Id.* at 613. But the trial court's ruling and Stockton's service by publication both occurred after the deadline had expired for Stockton to serve her expert report under Section 74.351(a). *Id.* (explaining that Stockton's expert report was due about two months before the trial court authorized service by publication and about six months before such service was completed).

Although Offenbach was still missing, his insurance carrier retained an attorney to defend the suit. *Id.* Offenbach's attorney filed an answer and later a motion to dismiss arguing dismissal was proper because Stockton had not served

17

her expert report on Offenbach or his attorney within the time provided under the Act. *Id.* Stockton responded that it was not possible to serve Offenbach personally within the deadline because his last known address was invalid, certified mail letters were returned unclaimed, and her motion for substitute service had not been granted until after the 120 days to file her report had expired. *Id.* at 613.[10] She argued that an exception should be made because of the "extraordinary difficulty in locating Offenbach." *Id.* Stockton also pointed out that she had sent the expert report and CV to Offenbach's insurance carrier before filing suit and that she had attached a copy of the expert report and CV to her original petition.[11] The trial court denied Offenbach's motion to dismiss, concluding that "the intent of the Legislature was fulfilled by both sending the report to the insurance carrier before [Stockton] filed suit and by filing the report at the time the petition was filed." *Id.* at 613.

The Dallas Court of Appeals reversed, holding that "pre-suit service on a potential party does not satisfy the statutory service requirement" and merely

---

[10]   The version of Section 74.351(b) in effect at the time required the expert report to be served within 120 days from the date the defendant filed his original answer. TEX. CIV. PRAC. & REM. CODE § 74.351.

[11]   *See Offenbach v. Stockton*, 285 S.W.3d 517, 520–21 (Tex. App.—Dallas 2009), *aff'd*, 336 S.W.3d 610 (Tex. 2011).

attaching the expert report to the petition "does not comply with the statute."[12]

*Offenbach v. Stockton*, 285 S.W.3d 517, 521 (Tex. App.—Dallas 2009), *aff'd*, 336 S.W.3d 610 (Tex. 2011) ("*Offenbach*").[13]  Consequently, it held that "Stockton [had] not compl[ied] with the service requirements of [the Act] by delivering [the expert report] to the insurance carrier or filing it with the court."  *Id.* at 522.  In response to Smith's argument that a due diligence exception should be applied, the court held that it was "not permitted to engraft exceptions to the clear language" of the Act "no matter how desirable."  *Id.*[14]  While the court also stated that the plain language of the Act "require[d] the expert report to be served 'on each party or the party's attorney,' and [did] not authorize service on a party's insurance carrier," that statement was dicta[15] and was not an issue presented to the Texas Supreme Court on review.  *Id*. at 521.

---

[12]    The Texas Supreme Court has since held that pre-suit service of an expert report is sufficient to satisfy the service requirement under Section 74.351(a) of the Act. *See Hebner v. Reddy*, 498 S.W.3d 37, 42 (Tex. 2016).

[13]    We refer to the Dallas Court of Appeals' decision in *Offenbach v. Stockton*, 285 S.W.3d 517 (Tex. App.—Dallas 2009) as "*Offenbach*," and to the Texas Supreme Court's subsequent decision in *Stockton* v. *Offenbach*, 336 S.W.3d 610 (Tex. 2011) as "*Stockton*."

[14]    The court of appeals also engaged in an analysis of the constitutionality of the Act, holding the Act was not unconstitutional as applied to Stockton.  *Offenbach*, 285 S.W.3d at 524.

[15]    Because the Dallas Court of Appeals held that pre-suit service of an expert report was not permitted under Section 74.351(a), the court's statement regarding the effectiveness of Stockton's pre-suit service on Offenbach's insurance carrier was not necessary for its disposition.  It was thus dicta.  *See Cypress-Fairbanks Indep. Sch. Dist. v. Parra*, No. 01-22-00596-CV, 2023 WL 4003303, at *8 (Tex. App.—

The Texas Supreme Court granted Stockton's petition for review, and it considered only three issues: whether the appropriate standard of review was abuse of discretion or *de novo*, whether a due diligence exception applied to toll the running of the 120-day deadline to file an expert report under the Act, and whether the Act's 120-day deadline violated the Texas Constitution's open courts provision. 336 S.W.3d at 614. After holding that *de novo* review applied to the issues before it, the court rejected Stockton's two remaining issues, holding that the trial court was not solely to blame for the delay in service, that a fact issue had not been raised concerning Stockton's due diligence in serving the expert report, and that the Act was not unconstitutional as applied to Stockton. *Id*. at 615–18. The court did not, as Demerson suggests, hold that an insurance carrier may not be served with an expert report under the Act. Nor did the court analyze whether a party's duly authorized agent may be served with an expert report or whether pre-suit service of a report is appropriate. Indeed, no party presented that issue to the court. *Stockton* thus does not control the issue before us.

Even if we consider the Dallas Court of Appeals' statements in *Offenbach* concerning the service of an expert report on a professional liability insurance

Houston [1st Dist.] June 15, 2023, no pet.) (mem. op.) (holding court's unnecessary analysis of issue constituted dicta, "which is not binding as precedent"); *In re Kholaif*, 624 S.W.3d 228, 231 (Tex. App.—Houston [14th Dist.] 2020, orig. proceeding) (noting observation or remark concerning rule, principle or application of law that is not necessary to determination of case is dicta).

20

carrier, we are not persuaded. Unlike the facts here, the plaintiff in *Offenbach* did not argue that the professional liability insurance adjuster was the physician's duly authorized agent, and the appellate court did not contemplate any agency arguments or even address the service requirements of Rule 21a. And unlike here, there was no testimony in *Offenbach* that the plaintiff had sent the physician her notice of claim and that the physician had then forwarded the claim to his professional liability insurance carrier for evaluation. Nor was there evidence in *Offenbach* that, like here, the insurance carrier had forwarded the expert report to the defendant physician who did not dispute receiving it—indeed, the defendant in *Offenbach* could not be located, even by his own insurance carrier. *See Stockton*, 336 S.W.3d at 612; *Offenbach*, 285 S.W.3d at 520–21. We further note that the Dallas Court of Appeals' holding in *Offenbach* is of limited import because since then, the Texas Supreme Court has held that pre-suit service of an expert report satisfies the service requirement of Section 74.351(a). *See Hebner*, 498 S.W.3d at 42–43; *Ransom*, 503 S.W.3d at 412. We are thus not persuaded by *Offenbach* or Demerson's arguments on this point.

In *Poland v. Ott*, 278 S.W.3d 39 (Tex. App.—Houston [1st Dist.] 2008, pet. denied), we considered whether the Act (in its then current version) permitted an expert report to be served pre-suit. While the Supreme Court has now resolved

that issue,[16] holding that an expert report may be served before suit is filed, the dissent in *Poland* is relevant to the issue of pre-suit service on an insurance carrier and worth noting. *Poland* stemmed from an elective heart surgery, after which the patient died. *Id.* at 41. The plaintiffs served their expert report pre-suit on a representative of the defendant doctor's professional liability insurance carrier. *Id.* at 42. They also served the doctor's counsel with the report 123 days after filing suit. *Id.* In response to the physician's Chapter 74 motion to dismiss, the plaintiffs argued that service of their expert report was timely because they had served the report pre-suit on a representative of the defendant physician's professional liability insurance carrier, who plaintiffs described as the defendant's designated representative. *Id.* The majority declined to consider whether service on the professional liability insurance carrier was proper, holding instead that pre-suit service of an expert report was not permitted. *Id.* at 46. The court stated:

> We need not determine whether former section 74.351(a) allows designated representatives of a defendant or his attorney to receive service of an expert's report: even if the answer to this question is "yes," we must nonetheless affirm because provision of an expert

---

[16]     In *Hebner*, the plaintiffs served an expert report concurrently with a pre-suit notice letter. 498 S.W.3d at 38. After filing suit, the plaintiffs, in attempting to serve the same expert report on the defendant, mistakenly served an expert report addressing a different doctor, patient, and claim. *Id.* After the 120-day deadline passed, the defendant moved to dismiss the plaintiffs' claims for failure to serve an expert report. *Id.* The trial court denied the motion, the court of appeals reversed, and the Texas Supreme Court reversed the court of appeals, holding that plaintiffs had satisfied the expert report requirement through their pre-suit service of an "otherwise satisfactory expert report." *Id.* at 39.

report before a health-care-liability claim is filed in court against the physician or health-care provider does not meet former section 74.351(a)'s service requirements.

*Id.* at 46. In his dissent, joined by Justice Bland, Justice Jennings reasoned that pre-suit service on a defendant's liability insurance carrier satisfies the requirements of Section 74.351(a), noting:

> [A]lthough [defendant] Dr. Ott complains that neither he nor his attorneys received the [plaintiffs'] expert report directly from the [plaintiffs] after they had filed their lawsuit, the [plaintiffs'] service of the expert report upon Dr. Ott's insurance carrier prior to the filing of their lawsuit, as requested by [the insurer's representative], was adequate. Dr. Ott makes no showing of any prejudice. In fact, [the insurer] is presumably fulfilling its duty to defend him.

*Id.* at 60 (Jennings, J., dissenting). He continued:

> Relying on rule 21a to fault the [plaintiffs] for not serving yet another copy of their expert report on Dr. Ott after filing suit not only results in a miscarriage of justice, but actually goes against the very purpose of our rules of civil procedure upon which the panel relies to reach its holding. We are to "liberally" construe the rules because "[t]he proper objective of rules of civil procedure is to obtain a just, fair, equitable and impartial adjudication of the rights of litigants under established rules of substantive law."

*Id*. (citing TEX. R. CIV. P. 1). These principles apply with equal or stronger force here.

Demerson received Smith's Notice of Claim and she forwarded the notice to her professional liability insurance carrier for investigation and handling of Smith's claim. Fulfilling its right and duty to defend, TMLT corresponded directly with Smith's counsel, and it requested relevant information from Smith to evaluate

23

her claim. Smith's counsel responded by providing the requested information to TMLT pre-suit, including Smith's expert report, which no one disputes TMLT received and later forwarded to Demerson and her retained attorney "for review." Indeed, Demerson attached that report to her Motion to Dismiss. Demerson was thus informed, both through service on her liability insurance carrier and later through her actual receipt of the report, of the nature of Smith's claims against her, and the trial court had a basis to consider whether Smith's claims had merit.

We thus conclude that Smith's pre-suit service of her expert report on TMLT complied with the service requirements of Section 74.351(a).[17]

---

[17]     *Hebner's* discussion of pre-suit notice is also worth noting. In *Hebner*, the Supreme Court averred that dismissing health care liability claims because expert reports were served pre-suit is contrary to the Act's intent:

> In attempting to quickly jettison meritless lawsuits and save parties the expense of protracted litigation, the Act's expert-report requirement serves two purposes: (1) it "inform[s] the defendant of the specific conduct the plaintiff has called into question[;]" and (2) it "provide[s] a basis for the trial court to conclude that the claims have merit." As we have said, "knowing what specific conduct the plaintiff's experts have called into question is critical" to the defendant's and the court's ability to evaluate the viability of a claim.

498 S.W.3d at 41 (citing *Am. Transitional Care Centers of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 876–79 (Tex. 2001)). The Court continued:

> Dismissal would dispose of a potentially meritorious claim and punish Hebner for demonstrating her claims had merit from the moment she asserted them—a result the Legislature did not intend and our state constitution potentially does not allow.

*Id.* at 43.

## 2. Demerson Authorized TMLT to Interact with Smith

Demerson argues that even if service on a duly authorized agent is permitted, Smith did not satisfy the service requirement of Section 74.351(a) because "[t]here is no evidence or authority" that TMLT was duly authorized to receive legal documents on her behalf. But this belies the evidence presented to the trial court on this issue.

In response to Demerson's Motion to Dismiss, Smith argued that service on TMLT was proper because TMLT was Demerson's duly authorized agent. Smith argues that Demerson "never produced evidence to the contrary or filed a sworn denial of this fact." Smith explains that whether one is a duly authorized agent requires "a fact-intensive inquiry" by the trial court. She argues that in denying Demerson's Motion to Dismiss, the trial court impliedly found that TMLT was Demerson's duly authorized agent based on the uncontroverted evidence she presented to the trial court on this issue.

We agree with Smith that the evidence presented to the trial court established that TMLT was Demerson's duly authorized agent for purposes of service under Section 74.351(a). After Smith sent her Notice of Claim to Demerson, Demerson forwarded that notice to her professional liability insurance carrier for handling. Attached to Smith's response to Demerson's Motion to dismiss is a letter from TMLT dated July 30, 2021, where Paula Thomas, Senior

Litigation Supervisor for TMLT, states that "TMLT is the professional liability insurance carrier for [Demerson]" and that the "Notice of Claim letter has been forwarded to this office for response." Smith thus produced evidence that Demerson authorized TMLT to evaluate Smith's claims and to respond to the Notice of Claim.

To "properly evaluate" Smith's claims, Thomas requested in her letter that Smith provide, among other things, her "specific allegations with regard to [Demerson's] acts or omissions which [she] claim[s] constitute negligence." On January 7, 2022, Smith forwarded her expert report to Thomas, and it is undisputed that Thomas then forwarded the report to Demerson. As evidence, Smith attached to her response an email dated January 7, 2022, where Thomas states: "I will forward a copy of the expert report to Dr. Demerson for review" and "I will be assigning her case to Marikay Evans/Luccia&Evans." And that is exactly what happened. No one disputes that TMLT retained Luccia & Evans to handle the Notice of Claim and Smith's eventual lawsuit, or that both Demerson and her counsel received Smith's expert report from TMLT.

Smith also attached to her response TMLT's Professional Liability Insurance Policy, which Demerson produced as part of her disclosures. The policy provides that TMLT "shall have the right and duty to defend any *claim* or lawsuit . . . seeking compensatory damages against the insured" and that such duty to defend

26

"includes the right to select defense counsel" and the right to "appeal any judgment." The policy allows TMLT to settle any claim or lawsuit subject to the insured's limitation and consent. The evidence thus supports Smith's contention that Demerson authorized TMLT to act on her behalf in handling the Notice of Claim and that TMLT was fulfilling its right and duty to defend by communicating with Smith's counsel, and ultimately retaining Luccia & Evans—Demerson's current counsel—to defend Smith's claim and lawsuit.

Demerson did not provide any controverting evidence on this point. Instead, she argues that she "did not consent or authorize [TMLT] to receive service of process under the policy or otherwise in writing." She argues that under the policy, she has the right to "choose any license attorney for the legal services" and that the policy "places the responsibility on the insured" to notify "TMLT of a legal proceeding and not vice versa." We are not persuaded.

Whether or not the policy gives Demerson the right to select her counsel of choice, it is undisputed that Demerson authorized TMLT to investigate Smith's Notice of Claim and to interact with Smith's counsel on her behalf. Pursuant to its right and duty to investigate Smith's claim, it is undisputed that TMLT requested documents from Smith and further that Smith sent her expert report to TMLT in response, that TMLT sent the report to Demerson for "her review," that TMLT

retained counsel to represent Demerson, and that Demerson's counsel received Schams' report.[18]

We thus conclude that Smith provided evidence to the trial court that TMLT was Demerson's duly authorized agent and that Smith's pre-suit service of her export report on TMLT satisfied the requirements of Section 74.351(a).

### 3. Demerson Received the Expert Report

Demerson also argues that even though she received the report from TMLT, that is insufficient, because Smith was required to serve the report directly on her or her attorney. We have already concluded that service on TMLT, as Demerson's duly authorized agent, was proper under Section 74.351(a). But even if TMLT was not Demerson's duly authorized agent, we hold that under the facts presented here, Demerson's actual receipt of the report from TMLT was sufficient under Section 74.351(a).

Demerson relies on cases that are distinguishable. *See Univ. of Texas Health Science Ctr. at Houston v. Joplin*, 525 S.W.3d 772, 781–82 (Tex. App.—Houston [14th Dist.] 2017, pet. denied) (holding service deficient when expert report and

---

[18] While that should end the matter, we further note that nothing in the policy precludes TMLT from interacting with a former patient or her counsel to investigate a claim. To the contrary, the policy expressly gives TMLT "the right and duty to defend any *claim*," and the policy defines the term "*claim*" broadly to include "the receipt by the *insured* of a written notice of *claim* sent pursuant to applicable law" or "the receipt by the *insured* of a written demand from a *patient* or representative of such *patient*" so long as that notice or demand "seeks compensatory *damages* because of [an] *injury* . . . ."

CV were served on physician's former employer after 120-day deadline even though defendant physician forwarded expert report and CV to employer, a separate defendant, before it was joined); *Gutierrez,* 237 S.W.3d at 874 (holding service deficient when defendant received courtesy copy of expert report prior to being named a party from other defendant but none from plaintiff); *Rinkle v. Graf*, 658 S.W.3d 821, 823, 826–27 (Tex. App.—Houston [14th Dist.] 2022, no pet.) (holding filing expert report in district clerk's records before defendant was served or appeared does not satisfy service requirement even though defendant's counsel accessed the document on district clerk's website).

We find *Spiegel v. Strother*, 262 S.W.3d 481 (Tex. App.—Beaumont 2008, no pet.) more persuasive. In that case, a physician appealed from the trial court's denial of his motion to dismiss. *Id.* at 482. After suit was filed but before the issuance of citation, a process server delivered the plaintiff's expert report and CV to "the person behind the window" in the physician's office. *Id.* The doctor, who was out of town that day, argued that the delivery did not constitute service "because the report was not delivered directly to him in person, and the documents were not delivered to an agent authorized by him to accept 'service.'" *Id.* During discovery, the expert report and CV were mailed via priority mail[19] with other

---

[19] At the time *Spiegel v. Strother*, 262 S.W.3d 481 (Tex. App.—Beaumont 2008, no pet.) and *Goforth v. Bradshaw*, 296 S.W.3d 849, 851 (Tex. App.—Texarkana 2009, no pet.) were decided, Rule 21a provided that if serving by mail, service had

discovery responses to defense counsel. *Id.* The doctor moved to dismiss the lawsuit "based solely on the method of delivery," arguing that even though he and his attorney had received the report within the required 120-day deadline, the suit should be dismissed because "strict compliance with the methods of service provided in Rule 21a is required by the statute, and the undisputed fact of the timely receipt of the report from the plaintiffs [was] irrelevant." *Id.* at 483. The court of appeals disagreed, stating that:

> The primary objective of the rules relating to service is to provide notice so that the party will have an opportunity to be heard. Service assures that the litigants have copies of documents affecting the litigation. When attempted service pursuant to Rule 21a achieves actual timely delivery to the proper party in a manner that accomplishes the objective of the rule, and no harm is shown, courts have found adequate service.

*Id.* at 483–84 (internal citations omitted). The court of appeals thus affirmed the trial court's denial of the motion to dismiss. *Id.* at 486; *see also Goforth v. Bradshaw*, 296 S.W.3d 849, 851 (Tex. App.—Texarkana 2009, no pet.) (holding that even though expert reports were forwarded to defendants by regular mail rather than by registered or certified mail, timely service was accomplished given that defendants received expert reports and CVs within 120-day deadline and "purposes of Section 74.351 and Rule 21a [were] met").

---

to be effected "by certified or registered mail[] to the party's last known address[.]"

Like the court in *Spiegel,* we conclude that Smith's pre-suit service of the expert report on TMLT via email, which resulted in the actual timely delivery of the report on Demerson "for her review," was done in a matter that accomplished the objective of Section 74.351(a) and Rule 21a. Demerson had notice and an opportunity to be heard, and she has shown no prejudice.

## 4. The Curriculum Vitae

Demerson argues that even if service on TMLT were permitted, Smith still failed to comply with Section 74.351(a) because she failed to attach Schams' CV to the expert report and the CV "is an integral element of Chapter 74.351." She argues that to "qualify as an expert report under Chapter 74.351(a), the expert report must be accompanied by a curriculum vitae."

This Court, as well as several other appellate courts, have rejected this argument, holding that nothing in Chapter 74 requires that a CV be served as a separate document. *See Garrett*, 232 S.W.3d at 177 (holding Chapter 74 "does not include a requirement that a curriculum vitae be served as a separate document"); *see also Univ. of Tex. Med. Branch at Galveston v. Simmons*, No. 14-09-00246-CV, 2009 WL 4810296, at *3 (Tex. App.—Houston [14th Dist.] Dec. 15, 2009, no pet.) (mem. op.) (explaining that expert's qualifications and CV "may be set out in the body of the expert report"); *Johnson v. Willens*, 286 S.W.3d 560, 564 (Tex. App.—Beaumont 2009, pet. denied) ("To be sufficient, a curriculum vitae need not

be on a separate piece of paper. We hold that a sufficient curriculum vitae may be contained in the expert report itself."); *Carreras v. Marroquin*, No. 13-05-082-CV, 2005 WL 2461744, at \*2 (Tex. App.—Corpus Christi–Edinburg Oct. 6, 2005, pet. denied) (mem. op.) ("The statute does not require that a curriculum vitae be produced as a separate document."). As various courts have held, an expert's qualifications and CV may be set out in the body of the expert report, and there is no requirement that the report and the CV must be separate documents. *See Simmons*, 2009 WL 4810296 at \*3; *Garrett*, 232 S.W.3d at 177.

The expert report Smith served on TMLT pre-suit included Schams' education, his specialty, his familiarity with the standard of care for infant circumcisions, and his experience and education with respect to circumcisions specifically. His qualifications were thus enumerated in the expert report giving Demerson notice and the opportunity to challenge the sufficiency of the report based on Schams' listed qualifications if she deemed it necessary. *See Carreras*, 2005 WL 2461744 at \*2 (holding that a separate CV is not required under Section 74.351(a) and explaining that "the purpose of the curriculum vitae requirement is to permit the trial court to perform its 'gatekeeper' function by assessing the qualifications, experience, and expertise of the expert."); *Simmons*, 2009 WL 4810296 at \*3 (same).

32

Relying on *Pena v. Methodist Healthcare Sys. of San Antonio, Ltd.*, Demerson argues that the twenty-one-day period to object to the sufficiency of an expert report is not triggered "until [a] claimant has filed *both* [an expert] report and a curriculum vitae [for] each expert listed in the report[.]" 220 S.W.3d 52, 54 (Tex. App.—San Antonio 2006, no pet.) (emphasis added). But a careful reading of *Pena* clarifies that the court did not hold that a separate CV is required under Chapter 74 to trigger the deadline to file objections.

In *Pena*, the San Antonio Court of Appeals affirmed the trial court's dismissal of a health care liability claim, holding the claimant was required to provide both an expert report and CV. 220 S.W.3d at 53–54. The court explained that the lack of a CV left the trial court with "no discretion" to deny the hospital's motion to dismiss or to grant Pena an extension of time in which to file a report with a CV. *Id.* at 54 n.2. But in *Pena*, the plaintiff neither filed a CV nor claimed the qualifications of her expert were identified in the served report. Consequently, the report failed to comply with Section 74.351(a) and the timeline to file objections under the Act was not triggered. As the San Antonio Court of Appeals later clarified in *Laredo Medical Center v. Melendez*, its holding in *Pena* "addressed the triggering of the time period for filing objections to an expert report [and] did not address whether the curriculum vitae under section 74.351(a) needs to be contained in a separate document." No. 04-13-00308-CV, 2013 WL

6255741, at *3 (Tex. App.—San Antonio Dec. 4, 2013, no pet.) (mem. op.) (distinguishing *Pena*, where plaintiff "never claimed that the curricula vitae [was] included in the expert reports")[20]; *see also Johnson*, 286 S.W.3d at 564 (distinguishing *Pena*, noting there was "no indication the plaintiff claimed that the expert report contained sufficient information concerning the expert's qualifications to function as both an expert report and curriculum vitae").[21]

*Pena* thus does not stand for the proposition that a separate CV must be served under Section 74.351(a) to trigger the deadline for a defendant to file objections to an expert report. Moreover, here, unlike in *Pena*, Smith argued that a separate CV was not required because the expert report served on TMLT included sufficient indicia of Schams' qualifications, thus complying with the service requirement of Section 74.351(a).

To the extent Demerson felt the January 2022 expert report was deficient because Schams lacked proper qualifications to provide the expert report, that issue did not implicate timely service under Section 74.351(a), but rather the sufficiency

---

[20] In *Laredo Medical Center v. Melendez*, No. 04-13-00308-CV, 2013 WL 6255741, at *4 (Tex. App.—San Antonio Dec. 4, 2013, no pet.) (mem. op.), the court explained that four other Texas intermediate appellate courts, including this Court, have previously held that a "curriculum vitae under section 74.351(a) need not be contained in a separate document," and the court "agree[d] with the holding of [its] sister courts."

[21] Demerson does not address or acknowledge controlling authorities from this Court or cases from other intermediate court of appeals holding that a separate curriculum vitae is not required to fulfill the service requirement of Section 74.351(a).

of the report. *See Poland v. Grigore*, 249 S.W.3d 607, 615 (Tex. App.—Houston [1st Dist.] 2008, no pet.) (distinguishing between objections to sufficiency of report and timeliness of report, noting that "sufficiency" as used in Section 74.351 "does not mean timeliness").

Demerson argues she was prejudiced because she did not know how to calculate the deadline in which to file an objection to the expert report, arguing that a defendant "only has 21 days to object from the date of service, generally" and due to Smith's "lack of service" of the export report, she "was unable to timely object to its sufficiency." But Section 74.351(a) provides that:

> Each defendant physician or health care provider whose conduct is implicated in a report must file and serve any objection to the sufficiency of the report not later than the later of the 21st day after the date the report is served *or the 21st day after the date the defendant's answer is filed*, failing which all objections are waived.

TEX. CIV. PRAC. & REM. CODE § 74.351 (emphasis added). Given that Demerson received Smith's expert report pre-suit, which she later attached to her Motion to Dismiss, Demerson could have filed her objections to the report twenty-one days after she filed her answer. But Demerson remained silent, opting instead to file a motion to dismiss when the 120-day deadline to serve an expert report expired, arguing that Smith had served no report. Demerson's strategy proved unsuccessful, and the resulting consequence is that she now has waived any objection to Smith's expert report. *See Hebner*, 498 S.W.3d at 44 (holding

35

defendant "intentionally remained silent until passage of the 120–day deadline in hopes that she could leverage an obvious mistake to achieve outright dismissal" and holding that as a result defendant "waived any objection to [the plaintiff's] pre-suit expert report").

## B.    The Post-Suit Expert Report

On February 9, 2022, Demerson filed her original answer electronically through the EFM eFileTexas.gov.  Three hours later, Smith's counsel served Schams' expert report and CV through the same EFM—eFileTexas.gov. Demerson and Smith used their respective EFSPs, MyFileTexas.gov and MyFileRunner.com, to complete the electronic filing and service.[22]  Demerson argues that Smith's February 9, 2022 service was deficient because it did not comply with Section 74.351(a) and Texas Rule of Civil Procedure 21a.

Like a number of our sister courts, we have held that the word "serve" as used in Section 74.351(a) requires compliance with Rule 21a.  *See Gutierrez*, 237 S.W.3d at 872 (holding Legislature "intended for claimants to comply with [R]ule 21a to fulfill the requirements of [S]ection 74.351(a)").  Neither party disputes that proposition.  Rule 21a(a) states with respect to electronic service:

---

[22]    MyFileTexas.gov and MyFileRunner.com are both certified to complete filings through the EFM MyFileTexas.gov.  *See* https://efiletexas.gov, last visited June 17, 2024.

(1) Documents Filed Electronically. A document filed electronically under Rule 21 must be served electronically through the electronic filing manager if the email address of the party or attorney to be served is on file with the electronic filing manager. If the email address of the party or attorney to be served is not on file with the electronic filing manager, the document may be served on that party or attorney under subparagraph (2).

TEX. R. CIV. P. 21a(a)(1). Rule 21a(b)(3) further states that:

Electronic service is complete on transmission of the document to the serving party's electronic filing service provider. The electronic filing manager will send confirmation of service to the serving party.

TEX. R. CIV. P. 21a(b)(3).

Demerson argues that she was not served with Schams' expert report or CV on February 9, 2022, because her counsel never received Smith's served documents and thus, she was not properly served under Rule 21a. According to Demerson, her counsel's email address was not "on file" with the EFM eFileTexas.gov until February 14, 2022. Consequently, because her counsel's email address was not "on file" with the EFM when Smith attempted to serve the expert report and CV electronically, she was not served. As confirmation, she points to the electronic service confirmation received by Smith's counsel, which Demerson argues "reflect[s] that Defendant's counsel was not served" with the expert report and CV.

Although Demerson argues that her counsel's email address was not "on file" with the EFM MyFileTexas.gov on February 9, 2022, when Smith served the

37

expert report and CV electronically, Demerson does not dispute that earlier that same day, her counsel filed her answer electronically using the same EFM. Demerson could not have filed her answer electronically through the EFM MyFileTexas.gov if her email address were "not on file" with the EFM. *See* TEX. R. CIV. P. 21a(a)(1) (stating that electronically-filed documents "must be served electronically through the Electronic Filing Manager"); *see also*, *e.g.*, *Meigs v. Zucker*, No. 01-19-00321-CV, 2020 WL 4289974, at *6 (Tex. App.—Houston [1st Dist.] July 28, 2020, pet. denied) (mem. op.) (noting appellee produced evidence indicating pro se appellant "had e-filed multiple documents . . . and that her email address was thus on file with the e-filing manager") (citing TEX. R. CIV. P. 21a(a)(1)).

When Demerson filed her answer electronically on February 9, 2022, her counsel used the EFSP MyFileTexas.gov, and that EFSP transmitted the answer to the EFM MyFileTexas.gov. The District Clerk accepted Demerson's electronic filing and time stamped the answer "2/9/2022 12:40 pm." Demerson's electronic filing included a signature block listing the email address of her counsel, and an "automated certificate of e-service" created by the "efiling system" indicating that electronic service of the answer had originated from an email account at her counsel's firm. Three hours later, Smith's counsel served Schams' expert report and CV through the EFM eFileTexas.gov, using the EFSP MyFileRunner.com

38

Demerson insists that her counsel's email address was not "on file" with the EFM eFileTexas.gov until February 14, 2022, and as such, Smith's electronic service was deficient. Demerson did not make this timing argument initially in support of her Motion to Dismiss. Rather, two days after the trial court denied her motion, she filed a motion for rehearing, where she stated that "her counsel's email addresses were not added on file with Defendant's electronic filing manager until February 14, 2022." In support of her argument, she attached to her motion for rehearing an unauthenticated, unidentified document titled "Service Contact History" reflecting the following:

| Name | Action | Date/Time |
| --- | --- | --- |
| Daniel Regner | Attach | 01/10/2022 11:44 AM |
| Beth Diddle | Attach | 01/10/2022 11:44 AM |
| Lawrence Wilson | Attach | 01/10/2022 11:44 AM |
| Mary Evans | Attach | 02/14/2022 1:08 PM |
| Blessy Varghese | Attach | 02/14/2022 1:08 PM |
| LE e-service | Attach | 02/14/2022 1:08 PM |
| W. Mark Lanier | Attach | 07/15/2022 4:49 PM |

Demerson did not explain in her motion for rehearing, nor does she explain in her appellate brief, the source of this document, and it is unclear what exactly it

reflects. It appears that Demerson's argument is that her counsel did not add herself to the service list for the case allowing her to receive service of electronically-filed documents until February 14, 2022, presumably as shown on the "Service Contact History" print out, and thus her email address was not "on file" with the EFM on February 9, 2022. But her counsel's delay in adding herself to the service list for the case does not mean that her counsel's email was not "on file" with the EFM on February 9, 2022, when her counsel electronically filed Demerson's answer via the EFM MyFileTexas.gov; nor are we at liberty to attribute her counsel's lack of diligence in adding herself to the service list as a failure of Smith to serve her report timely and as required under Section 74.351 and Rule21a.[23]

Moreover, based on Demerson's arguments, it appears the issue here is not service, but rather receipt of the report by Demerson's counsel. But Chapter 74 does not trigger a motion to dismiss for failure of the defendant to receive the report, but on failure of the plaintiff to serve a report. Rule 21a(b)(3) provides that "electronic service [of a document] is complete on transmission of the document to the serving party's electronic filing service provider." TEX. R. CIV. P. 21a(b)(3).

---

[23] According to the Affidavit of Daniel Q. Regner, a legal assistant with Smith's counsel's firm, "while [Demerson's] counsel's email address was on file with the electronic filing manager at eFileTexas.Gov [on February 9, 2022] . . . it is not clear whether [Demerson's] counsel properly added herself to the service list" when filing her answer. The affidavit was attached to Smith's response to the Motion to Dismiss.

40

Smith transmitted Schams' expert report and CV for service to its electronic filing service provider MyFileRunner.com on February 9, 2022 at 3:40 p.m. Thus, under the plain language of Rule 21a(b)(3), Smith completed service of the report and CV when she transmitted the documents to MyFileRunner.com on that date—well within the 120-day deadline to file an expert report under Section 74.351(a). *See id; see also Brandon v. Rudisel*, 586 S.W.3d 94, 102 (Tex. App.—Houston [14th Dist.] 2019, no pet.) (holding that under Rule 21a(b)(3) service is "complete on transmission of the document to the serving party's electronic filing service provider" and that electronic service is not "somehow incomplete when a party experiences computer or email problems").

We overrule Demerson's sole issue.

## Conclusion

We affirm the trial court's order denying Demerson's Motion to Dismiss.


Veronica Rivas-Molloy
Justice


Panel consists of Justices Goodman, Landau, and Rivas-Molloy.